# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CIVIL NO. 2:11CV54-MR-DSC

| | |
|---|---|
| FOIFUA LEOVAO,  )  <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> **Commissioner of Social** ) <br> **Security Administration,** ) <br>     Defendant. ) <br> ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" (document #12) and "Memorandum in Support ..." (document #13) both filed May 9, 2012; and Defendant's "Motion for Summary Judgment" (document #14) and "Memorandum in Support... " (document #15), both filed July 9, 2012. On July 23, 2012, Plaintiff filed a "Response to Defendant's Memorandum ..." (document #16).

On September 10, 2012, this case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Judgment on the Pleadings be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on November 7, 2007, alleging that he became disabled on December 22,

2004 (Tr. 138-142).[1] Plaintiff's application was denied initially and on reconsideration. A hearing was held on March 8, 2010 (Tr. 59-98).

On October 3, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 12-29). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ also found that Plaintiff suffered from status/post work injuries, lumbar and cervical degenerative disc disease, degenerative joint disease of the spine, migraine headaches, obesity, chronic pain syndrome, history of head injury with reduced intellectual functioning, mood disorder, depression, bipolar disorder, anxiety, personality disorder, and a history of alcohol abuse in remission (Tr. 17-18). The ALJ found these to be severe impairments within the meaning of the regulations, but that they failed to meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform light work[3] with a sit/stand option. The ALJ defined the sit/stand option as not requiring Plaintiff to be off task for more than five percent of the work period. The ALJ found that Plaintiff had the ability to sit for sixty minutes, stand and walk in one to five minute increments after sitting, and to perform any additional standing that was consistent with the exertional limits and interspersed throughout the workday. (Tr. 19). The ALJ placed additional restrictions on Plaintiff's RFC,

---

[1]Because Plaintiff acquired sufficient quarters of coverage to remain insured for DIB only through December 31, 2009 (Tr. 17 at Finding 2, 146), he had the burden of showing that he was disabled on or before that date to establish eligibility for DIB. See 20 C.F.R. §§ 404.101, 404.130-404.131.

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]"Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

2

including a limitation to working while frequently using a handheld assistive device, and occasionally pushing and pulling with his upper extremities, operating foot controls, and performing overhead reaching. Id. Plaintiff could not climb ladders, ropes, or scaffolds, and could not crouch, kneel, or crawl. Id. He could occasionally climb ramps or stairs. Id. Plaintiff was to avoid concentrated exposure to moving machinery and unprotected heights. He could not handle, sell, or prepare alcoholic beverages. Id. He was limited to the performance of simple, routine, repetitive tasks. Id.

The ALJ then concluded that Plaintiff could not perform any of his past relevant work as a tree trimmer, cable re-winder, clothes presser, pizza maker, lumber yard worker, or lineman. (Tr. 23).

The ALJ relied upon the Medical-Vocational Guidelines and the testimony of a vocational expert ("V.E.") to conclude that Plaintiff could have performed other work existing in the national economy. (Tr. 23-24). The ALJ finally concluded that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 25).

By notice dated October 4, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on December 6, 2011. Plaintiff argues that the ALJ erred in evaluating several medical opinions. He also contends that the ALJ erred by failing to find that his left shoulder bursitis/tendinitis constituted a severe impairment, and by not considering the effects of that impairment in formulating his RFC. See Plaintiff's "Memorandum ..." at 1, 13-18 (document #13). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483

F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" as that term of art is defined for Social Security purposes before the expiration of his insured status on December 31, 2009. [4] It is not enough for a claimant to show that he suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

A severe impairment is one which significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Impairments having only a minimal effect on basic work activities are not severe. See Social Security Ruling (SSR) 85-28, Medical Impairments That Are Not Severe, 1985 WL 56856; Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984). Plaintiff contends that the ALJ erred by failing to properly consider his left shoulder pain. The ALJ acknowledged that an MRI of Plaintiff's shoulder revealed "only mild AC [acromioclavicular] joint

---

[4] Under the Social Security Act, 42 U.S.C. §301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically deter-minable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

arthrosis ... and mild increased signal within the supraspinatus tendon compatible with tendinopathy/tendinitis..." (Tr. 22, 456). Dr. Brent Davis reviewed the MRI and found "mild inflammation of the rotator cuff with a.c. joint arthritis." (Tr. 451). However, the diagnosis of a mild shoulder problem does not establish a severe impairment. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (mere diagnosis of an impairment is insufficient to prove disability-the diagnosis must result in functional limitations that preclude a claimant's ability to work); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of an impairment says nothing about the severity of the condition); *see also* Caldwell v. Astrue, No. 5:11-cv-70, 2012 WL 2395196, at *3 (W.D.N.C. Mar. 2, 2012) (Mem. And Rec. op. adopted, 2012 WL 2394868) (same). The fact that an MRI revealed that Plaintiff had "mild" a.c. joint arthrosis and a "mild" increased signal within the supraspinatus tendon compatible with tendinopathy/tendinitis (Tr. 456) did not require the ALJ to find any functional limitations. Id. The ALJ proceeded through the sequential evaluation process, and considered Plaintiff's left shoulder problems in assessing his RFC. Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (concluding that "any error [regarding the severity analysis at step two] became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (ALJ's failure to find obesity to be a severe impairment at step two was harmless since ALJ proceed through rest of sequential evaluation process and the claimant did not establish that the assumed error affected the ALJ's determinations in the remaining steps of the sequential evaluation process); Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003) (unpublished) (where ALJ moves beyond step two and proceeds through the rest of the sequential evaluation process, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little

6

consequence."). When the ALJ finds a severe impairment, all impairments – both severe and non-severe – are considered in assessing Plaintiff's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184.

The ALJ found that Plaintiff had several severe impairments, completed the sequential evaluation process, and considered all of Plaintiff's alleged limitations in assessing his RFC. The ALJ found Plaintiff's complaints of shoulder pain to be credible. The ALJ also found that Plaintiff's shoulder problem resulted in additional limitations beyond those identified by the state agency reviewing physicians. (Tr. 22). Even assuming arguendo that the ALJ erred in omitting a discussion of Plaintiff's shoulder problem at step two, the error was harmless. The ALJ clearly factored it into his assessment of Plaintiff's RFC.

Next Plaintiff assigns error to the ALJ's treatment of the opinions by examining physicians Dr. Sean K. Keem and Dr. Karen Marcus, and treating physician Dr. James J. Hoski. Pl.'s Mem. at 15-16.

The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

7

In assessing Plaintiff's functional limitations, the ALJ properly weighed the medical evidence in formulating his findings. (Tr. 19-23). The ALJ provided a thorough analysis of the medical evidence and his RFC assessment was supported by the findings and opinions of Drs. Wood (Tr. 370-373), Keem (Tr. 289-292), and Hoski (Tr. 341-349); by four state agency reviewing physicians (Tr. 22, 304-311, 333, 412-419, 457-464); by the findings and opinions of examining psychologist Dr. Marcus (Tr. 293-299); and by the state agency reviewing psychologists (Tr. 312-315, 334, 434-437, 465-476, 477-490).

The evaluation of medical evidence is a task reserved to the Commissioner. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). The ALJ adequately explained his consideration of the opinion evidence, and substantial evidence supports his resolution of the conflicting evidence.

Plaintiff takes issue with the ALJ's rejection of Dr. Keem's opinion that he was limited to sedentary work. Dr. Keem was not a treating source. See 20 C.F.R. § 404.1527(c)(2) (2012); SSR 96-2p, Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188. Plaintiff contends that the ALJ "summarily stated" that Dr. Keem's opinion limiting him to sedentary work was not supported by objective medical evidence. The ALJ did not find that Dr. Keem's opinion lacked objective support. The ALJ indicated that he was giving Dr. Keem's opinion only "some weight," since his findings were inconsistent with the findings of other physicians. (Tr. 21, 292). Consistency with other evidence in the record is a significant factor in weighing opinion evidence. 20 C.F.R. § 404.1527(c)(4).

Dr. Keem's single examination yielded numerous strength measurements of 4/5. However, the ALJ pointed to an examination conducted less than two months later, where Dr. So found that Plaintiff had full range of motion in his legs, and full 5/5 strength in all extremities, except for 4/5 strength with right knee extension. (Tr. 21, 302-303). The ALJ also relied on findings by Dr. Hoski

which revealed that Plaintiff had full 5/5 strength throughout his extremities with normal sensation, coordination, and reflexes. (Tr. 21, 346). In assessing Plaintiff's Residual Functional Capacity, the ALJ limited Plaintiff to a restricted range of light duty work, essentially splitting the difference between Dr. Keem's opinion that Plaintiff was limited to sedentary work and the opinion of the state agency reviewing physicians who consistently opined that Plaintiff could perform medium level work. (Tr. 304-311, 333, 412-419, 457-464). The ALJ gave sufficient reasons for assigning only "some weight" to Dr. Keem's opinion.

Plaintiff next contends that the ALJ erred by failing to explain the weight assigned to the GAF[5] score of 49 assessed by examining psychologist Dr. Karen Marcus. The GAF scale does not have a direct correlation to the severity requirements utilized in the Social Security disability program. See Comments to Revised Medical Criteria for Evaluating Mental Disorders, 65 Fed. Reg. 50746, 50764-50765 (Aug. 21, 2000). Dr. Marcus's GAF score was not an opinion the ALJ had to address, since it did not directly address Plaintiff's ability to perform work-related activities. See Lopez v. Barnhart, 78 F. App'x 675, 678 (10th Cir. 2003) (GAF of 40 may indicate problems unrelated to work ability and, standing alone, does not evidence an impairment seriously interfering with claimant's ability to work); Wilkins v. Barnhart, 69 F. App'x 775, 780 (7th Cir. 2003) (characterizing Plaintiff's argument that GAF score of 40 was inconsistent with an ability to work as "weak," and explaining that GAF scale is "intended to be used to make treatment decisions..."); Howard v. Comm'r Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may be helpful to ALJ in formulating RFC, but "it is not essential to the RFC's accuracy"). See also Love v. Astrue, No.

---

[5]Global Assessment of Functioning (GAF) reflects the "clinician's judgment of the individual's overall level of functioning," and typically rates functioning at the time of the evaluation. American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. text revision 2000) (*hereinafter* DSM-IV-TR). A score of 49 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. *See* DSM-IV-TR 34.

9

3:11-cv-14-FDW-DSC, 2011 WL 4899989 at *4-5 (W.D.N.C. Sept. 6, 2011) (Mem. and Rec. dec. adopted, 2011 WL 4899984) ("GAF score, standing alone, is not evidence of an impairment that seriously interferes with Plaintiff's ability to work.").

The ALJ acknowledged the GAF score, but noted that subsequent state agency reviewing psychologists, who were fully aware of Dr. Marcus's findings, opined that Plaintiff was still capable of performing the basic mental demands of unskilled work.[6] (Tr. 22). The ALJ explained that the two earliest state agency psychological evaluations were based "almost solely on the findings and opinion of Dr. Marcus" and those psychologists still opined Plaintiff was capable of performing the mental demands of unskilled work. (Tr. 22, 312-315, 334). In the absence of objective mental health evidence in the record, the ALJ essentially adopted the state agency reviewing psychologists' opinions, finding them to be consistent with each other. (Tr. 23). Dr. Marcus's assigned GAF score does not provide a basis for remand

Finally, Plaintiff argues that the ALJ's decision should be remanded because he did not properly consider Dr. Hoski's opinion that Plaintiff's poor pain control impeded his return to work. (Tr. 341). The ALJ reviewed Dr. Hoski's treatment notes which revealed full range of motion, 5/5 strength throughout the extremities, and a negative straight leg raising test. (Tr. 21, 346). While the ALJ did not mention Dr. Hoski's statement that Plaintiff should see a pain specialist because pain control was impeding his return to work, the ALJ "is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed into the Administrative Record." Love, 2011 WL 4899989, at *5 (citations omitted). The ALJ credited Plaintiff's complaints of pain. (Tr.

---

[6]The basic mental demands of unskilled work include the abilities to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *See* SSR 85-15, Capability to Do Other Work -- the Medical-Vocational Guidelines as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857.

10

22) ("the claimant is credible to the extent that he has shoulder pain, arm pain, neck pain, leg pain, possible leg give-way and hand numbness that present the claimant with additional and significant limitations of function."). Dr. Hoski did not provide an opinion regarding the extent of Plaintiff's pain-related limitations. (Tr. 341). Consequently, Dr. Hoski's statement about pain management does not cast doubt on the ALJ's RFC assessment. The ALJ acknowledged that Plaintiff was limited by his pain and found that his impairments prevented him from returning to his past work. (Tr. 22-23).

The ALJ carefully considered the medical evidence of record and adequately explained his reasons for finding Plaintiff capable of performing a reduced range of light work. (Tr. 19-23). The ALJ gave sufficient reasons for affording only some weight to Dr. Keem's opinion. (Tr. 21). Dr. Marcus's assigned GAF score of 49 was not inconsistent with the ALJ's RFC assessment, nor was Dr. Hoski's statement about Plaintiff's pain management.

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from his combination of impairments, but was not disabled.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate

determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #12) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #14) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Martin Reidinger.

**SO RECOMMENDED AND ORDERED**.

Signed: November 14, 2012

David S. Cayer
United States Magistrate Judge